THIS was an action on the case for consequential damages by the plaintiff against the defendant for injuries to his person, his horse, carriage, and harness resulting from an accident in driving over the crossing of the railroad of the company at Fourth Street in the city of Wilmington, and which public crossing and street adjacent to it the company was at the time and had been for two weeks engaged in thoroughly and substantially relaying in the best and most improved method. The declaration alleged that during the progress of the work the company had torn up the entire bed of the public street at its intersection with the railroad, but had laid and maintained in the meanwhile a plank road of much diminished width across the railroad for the public use, and during the night on which the accident occurred had left a box-car standing on a railroad side track in Fourth Street, and so near the plank road as to scare his horse in his attempt to drive over it and cause him to run his carriage off one side of it, break one of the front wheels of it, and to throw him out violently upon the ground, thereby inflicting severe wounds and bruises on his back and other portions of his body, and to run away and break *Page 601 
up his carriage and harness, and greatly impair his previously good and gentle qualities as a carriage horse.
During the examination of the witness it appeared in evidence that the plaintiff was only thrown from his seat against the dasher of the carriage, and was not thrown out of it at all upon the ground.
Gordon, for the defendant, objected that there could be no proof as to personal or bodily injuries sustained by the plaintiff in the accident except as alleged in the declaration, as it was material and described his case as it was stated and presented by him.
The Court sustained the objection and ruled out any further evidence as to the plaintiff's personal injuries.
The other facts in the case will sufficiently appear from charge of the court.
Lore, for the plaintiff, asked the court to charge the jury that when alleged contributory negligence on the part of the plaintiff is relied upon by the defendant to defeat such an action as this, he must have been guilty of only ordinary negligence,Shear. Redf. on Neg., secs. 29, 30, 31, 32; that leaving the box-car standing on the bed of Fourth Street during the night constituted culpable negligence on the part of the company, it being contrary to an ordinance of the city which he had produced and read and a violation of law. Shear. Redf. on Neg., sec. 484. The right of the public to a highway is paramount to that of a railroad company for all other purposes than that of transit.Ogle v, P., W. B. R. R. 30., 3 Houst,
313.
The Court,
That as the only matters in dispute between the counsel in the case were questions of fact for their determination alone on the evidence before them, the court would have been content to leave the case without a remark to their consideration and decision upon the evidence alone had not the counsel for the defendant craved the instruction of the court to the jury on the principles *Page 602 
of law applicable to it as stated by him, and which we do not understand to be denied or objected to by the counsel for the plaintiff.
The entire evidence in the case, and particularly all the material facts involved in it, must now be apparent and familiar to you, as well from your recollection of it as detailed by the witnesses for the respective parties in the suit as by the discussion of it by the learned counsel engaged in trial of it before you, and we shall therefore forbear to refer to it specially, or to attempt to recapitulate the whole of it, or to repeat any portion of it, except as to such facts as appear to be wholly uncontroverted or uncontradicted by the conflicting testimony of the witnesses for the respective parties lest we might fail to fully appreciate the force and effect of it, or to present it with entire accuracy and completeness as it was delivered before you in the language of the witnesses themselves. Save on one point, I believe, material to the maintenance or defense of the action in this case the testimony produced on the part of the plaintiff as to every fact alleged and material to be proved, either in support or in defense of it, seems not only to conflict with but to directly contradict the testimony produced on the part of the defendant. This you doubtless have observed as well as the court, and while it is not our province in this stage of the case to form, and much less to intimate or express, any opinion as to the comparative weight or credibility of such contradictory testimony, and are glad we are relieved of the duty of determining that question, we can the better appreciate the grave responsibility which the law devolves upon the jury alone, and not upon the court of deciding it. Your duty, however, in determining such questions, when considering contradictory testimony is to reconcile it if be possible, but if it is not, then to ascertain to what extent and in what particulars it is irreconcilably inconsistent and contradictory. In estimating the probability of mistake or error on the part of wholly unbiased and impartial witnesses in a case, and in deciding on which side the error or mistake lies, much must depend upon the comparative intelligence and the means and opportunities of knowing the matter of fact in question of the respective witnesses, bearing in mind at the same time that positive is entitled to more weight than negative testimony, where *Page 603 
even the number and their comparative intelligence, means, and opportunities of seeing or knowing it are equal at the time; and with these general rules for your guidance in the difficult task often devolved upon juries in cases of conflicting evidence so contradictory as to admit of no reconcilement or agreement whatever, it will be your duty to give credit to that portion of it which you may consider the best entitled to it, and to find for the party in whose favor the evidence appears to preponderate under all the facts and circumstances proved in the cause.
This is what is technically termed an action on the case by Douglas M. McCoy, the plaintiff, against the Philadelphia, Wilmington and Baltimore Railroad Company, the defendant, to recover damages for injuries sustained by him on the night of the 24th of January, 1878, at the intersection of the railroad of the defendant and Fourth Street in the city of Wilmington, and which he alleges resulted from the negligence of the defendant, and were caused by the servants and employees of the company negligently leaving one of their box-cars standing that night on the track of the railroad where it crosses Fourth Street, in the said city, extending two-thirds of its length into the street, and so close to the contracted and temporary street crossing which the company had there constructed for the passages of horses and vehicles across the track during the progress of certain repairs which they were then doing upon the crossing at its intersection with that street, as to frighten his horse and cause him to shy from the crossing and break and run away with his carriage, in which he was then riding with Mr. Sylvester D. Townsend, a friend and neighbor of his, and both of whom were then proceeding by the way of Fourth Street to their respective residences a short distance out of the city. There were also other acts of negligence of a cumulative character, as well as other injuries alleged and complained of by the plaintiff, as increasing and aggravating the act of negligence just stated and the loss and damage resulting from it to him, but upon the final argument of the case before you by the counsel for the plaintiff they seem to have substantially resolved themselves into two demands simply, the damage which he alleges he has sustained in the injury done to his carriage and *Page 604 
harness, and in the injury done to his horse in his previous good qualities as a safe and gentle carriage horse, and in his permanent depreciation in that respect, as he alleges, and all because of the alleged act of negligence by the servants of the railroad company in leaving the car standing on the track, and the accident which resulted from it to the plaintiff as before stated.
If, after carefully considering and weighing all the evidence produced in the case by both the plaintiff and the defendant and whatever conflict and contradiction which may be found to characterize it, you should believe that the accident and injuries complained of were wholly attributable to the alleged negligence of the servants of the company in leaving the box-car so standing on their railroad track where it intersects or crosses Fourth Street in the city of Wilmington, and without any negligence on the part of the plaintiff having in fact contributed to produce or cause the accident and the consequence of it to him, then your verdict should be in favor of the plaintiff, and for such an amount of damages merely as you shall be satisfied from the proof before you will be sufficient to fully remunerate him for the actual injury done to his horse, carriage, and harness, and no more; for in an action of trespass on the case such as this is for a consequential injury, no exemplary or punitive damages, as they are termed, can be claimed or recovered. We must further say to you, however, on this point of the case, that as there seems to be no dispute about the fact and no contradiction of the testimony that the box-car before mentioned was left standing on the track at that crossing on that occasion from about ten o'clock at night until about five o'clock the next morning, it was not only an act of culpable negligence at common law on the part of the servant or agent of the company who in the usual course of his employment as such servant or agent so placed and left it there, which would render the railroad company liable in an action of this kind for damages for an accident and injury to any one lawfully using the street as a common public highway, wholly resulting from such negligence and without any contributory negligence on his part, as before stated, but it was also expressly prohibited by an ordinance of the city of Wilmington produced and read in evidence *Page 605 
which makes it unlawful for any railroad company to leave any engine, train, or car stationary on any railroad track owned or used by it where it is crossed by any street of the city for a longer time than ten minutes, except in case of an accident; and although the right to bring and maintain this action is not derived from the ordinance, the right and authority of the municipal corporation of the city to prescribe such a regulation with reference to its streets is derived from the same source of power and authority which conferred its charter with all its rights and powers in this State on the railroad company, the legislature of the State, and by competent authority the city ordinance made-the act of leaving the car standing there for a longer time than ten minutes under the circumstances unlawful as well as culpably negligent at common law.
But to this action and demand of the plaintiff for damages by reason of this alleged negligence on the part of the defendant, the latter alleges and sets up as a legal defense to it that the defendant did by his own negligence and indiscretion and lack of ordinary and proper care and prudence on that occasion, by driving down Fourth Street and over the crossing at such an hour of the night and in the condition in which he then well knew it to be, contributed to the occurrence of the accident, and was therefore in fault and chargeable with negligence in respect to the cause of it as well as the company, and if so, that he was not entitled to recover in the action, because, as the counsel for the defendant contends, it must be shown to the satisfaction of the jury that the negligence of the defendant was not only the cause but the whole and sole cause of the accident and injury which befell the plaintiff on the occasion in question, without any default or negligence, or want of ordinary care, caution, and prudence on his part to prevent or avoid the danger of such an accident at the time and under the circumstances proved which contributed in any degree to occasion it, to entitle him in law to maintain the action. And such we say to you is the well-settled principle of law applicable in all cases of this kind, when such contributory negligence on the part of the plaintiff is also proved to the satisfaction of the jury. But whether or not there was any such contributory negligence on *Page 606 
the part of plaintiff in this case was a question of fact, on which, of course, we express or intimate no opinion, as it was solely for the consideration and decision of the jury from all the evidence which they had before them on that point and which must still be fresh and distinct in their recollection. The testimony for the plaintiff and that for the defendant upon that point was conflicting and contradictory as to the state and condition in which the plaintiff and his friend and companion, Mr. Town-send, left the raffle and convivial entertainment at Mealy's saloon, about half past eleven o'clock that night, and as to the allegation of the defendant that they were then fuddled and so much under the influence and effect of intoxicating liquor when they were driving over the crossing as to be incapable of exercising that degree of care, caution, and prudence which the law requires of every man in such an attempt or undertaking to exercise in order to avoid and escape the danger of such a casualty or accident. The condition of the crossing at the time, the thorough work of repairing and relaying it with stone in which the servants of the company had then been engaged for about two weeks, and the temporary passages provided by them in the meanwhile for horses and carriages and vehicles of all kind by day and night over the tracks of the railroad and the crossing of it on Fourth Street, had been fully described and were in evidence before the jury, and from which it would appear to them what was the danger and what was the kind of care and prudence required of the plaintiff to drive over it with safety at that time, provided the jury should be satisfied from the evidence in the case that the accident was caused, so far as the railroad company was concerned, by the negligence of its servants in leaving the box-car standing on the track and the crossing in the position before described and more fully explained to you in the testimony of the witnesses who were examined particularly as to that fact. The rule of law in such cases has been correctly stated by the counsel for the plaintiff, and required only ordinary care, and not extreme or extraordinary care on the part of the plaintiff to avoid such an accident from the car standing on the track and so close to the temporary crossing of only twenty feet in width along and *Page 607 
upon which he was then driving, but the authority which he has cited in its support of it informs us that ordinary care in such a case implies the use of such watchfulness and precaution as are fairly proportioned to the danger to be avoided, judged by the standard of common prudence and experience. If the danger is remote or slight, the care required to avoid it may be slight. If the danger is near and extraordinary, extraordinary care and vigilance should be used to avoid it, because such would be the natural course of a prudent man. It is likewise further defined, with reference more particularly to cases of contributory negligence, to be that degree of care which persons of ordinary care and prudence are accustomed to use or employ under the same or similar circumstances; as in the case of one who is passing along an obstructed public highway he is bound to observe ordinary, that is to say, such care as a reasonably prudent man under the peculiar circumstances of the case would exercise, to preserve himself and his property from injury; and this, of course, imports such a man entirely sober at the time, and in full possession of his faculties of observation, attention, and reflection.
If, therefore, the jury should be satisfied from the evidence that the plaintiff for any cause or reason failed or neglected to exercise such care and prudence as we have just defined and described to avoid the danger and preserve himself and his horse and carriage from the accident and injuries in question, and by such negligence contributed in any degree with the negligence of the defendant or its servants in causing them, he is not entitled to recover for the injuries occasioned by it, and the verdict of the jury should be for the defendant; because as the law has no means, if such was the case, of ascertaining the comparative degree or amount of such contributory negligence, it cannot and will not undertake to measure it, or the relative degree of culpability or negligence of the respective parties in the case, but denies relief where the parties are both in fault and the negligence is mutual, although it may not be equal as between them.
The defendant further alleges in defense of the action that the plaintiff's horse was in a run down Fourth Street when he *Page 608 
reached the crossing, and that his carriage was broken before he reached that part of the crossing where the car was standing, in support of which the testimony of Stewart, the flagman and night watchman stationed at the crossing, was direct and positive, and was apparently corroborated (but to what extent it will be for the jury to consider and determine from the evidence before them in regard to that matter) by the testimony of Mahan, the hackman, while it is directly and as positively denied and contradicted by the testimony of Sylvester D. Townsend, who was riding in the carriage at the time with the plaintiff, and who in turn is apparently although indirectly corroborated (but to what extent it will likewise be for the jury to consider and determine) by the testimony of the witness;, Enoch Moore, who examined the next morning the tracks of the carriage and the hub of the broken whell of it over the crossing, as he said, is also evidence to the contrary, and all of which, as well as that of other witnesses touching the matter, the jury will doubtless remember with more accuracy than we could repeat it if we were to attempt to do so. But relying on the recollection of the jury of all the testimony on both sides on that point, we further say to you that if you should be satisfied from it that the horse of the plaintiff was in a run, either with or without his ability to hold him when he reached the crossing and the car standing on the railroad track near it, then the accident and the injuries done to the horse and carriage of the plaintiff on that occasion could not have resulted solely from the negligence of the defendant's servants in leaving the car standing there, and whether the running of the horse in that case was voluntary or involuntary on the part of the plaintiff he would not be entitled in law to recover in this action; because, if the running was voluntary on his part it was the greatest kind of imprudence to approach the crossing at that speed, and if it was involuntary on his part then it was an accident for which the defendant was in no manner responsible, which must in the first place have contributed in no small degree to the accident complained of and which so soon after followed it, if it was not the sole cause of it.
If, on the contrary, however, the jury should be satisfied, after carefully considering and weighing all the evidence and the *Page 609 
conflict and contradiction which characterizes so much of the material portions of it, that the plaintiff was not chargeable with any contributory negligence in the case such as the law contemplates and we have before defined, but that it was alone and solely attributable to the negligence of the servants of the defendant in leaving the box-car standing on the crossing in the position before mentioned, then the verdict of the jury should be in favor of the plaintiff for the amount of the injury and damage done to his horse and carriage by reason of it.
But as the counsel for the plaintiff has asked us to charge you as to the relative rights of the public in general and the railroad company to the use and enjoyment of the street in question and the crossing of its railroad at its intersection with it, we will say to you that as Fourth Street was then, and long had been before the company was chartered or the railroad was constructed by it, a common highway established and maintained at the expense of the city of Wilmington, there can be no question in this case that the people of the city and the public in general had a paramount right to the use and enjoyment of it as such, as well where it is intersected and crossed by the railroad as in any other part of it. But at the same time the railroad company not only has the right conferred but is expressly bound by its charter to provide and maintain at its expense a good and proper crossing over the railroad at the intersection mentioned for the convenience of the public so using and enjoying the street as a common highway; and as it was for the manifest benefit and advantage of all concerned, both the public and railroad company, that the work of repairing or reconstructing the crossing whenever necessary or expedient should be done in the best and in the most substantial and durable manner, the company was not bound to suspend any of its business or the transit of any of its trains in the transportation of passengers or property over its railroad in order to perform and complete the work in the shortest time and with as little delay and inconvenience to the public as possible, provided it was prosecuted with reasonable dispatch and diligence, and with as little inconvenience, obstruction, and danger to the public in the use of the street and crossing as was practicable under the circumstances.
 The plaintiff had a verdict for six cents damages.
 *Page 9